Madden, Judge,
delivered the opinion of the court:
The plaintiff, Ross Engineering Company, constructed a 250-man barracks for the Government at Fort Niagara, New York. It now sues the Government for damages for breach of contract, the alleged breach being the failure of the Government to complete and turn over to the plaintiff, on the dates specified in the contract papers, the foundations upon which the plaintiff was to build the superstructure of the barracks. The plaintiff claims that because of this delay it was forced to carry on during the winter months work which it could have, but for the delay, completed before *195 winter, and that the winter work required the use of more materials and the expenditure of more money for labor than would have been required if the work had been done before winter.
The Government, on August 15,1938, issued its invitation for bids on the job. The invitation included the specifications for the proposed building, and, in Addendum No. 1, to the specifications, which addendum is quoted in finding 2, it stated that the Government would complete the foundations and clear the site of the north wing by September 5, of the connecting bay by September 20, and of the south wing by September 30.
The plaintiff’s executive, Bright, in working up the figures for the plaintiff’s bid on the job, supposed that these statements of the Government about the dates of completion of the foundations would be fulfilled, and that the concrete work which the contractor would have to do could be begun and carried forward rapidly and economically, the brick walls of the north wing of the building could be built, and the winter months could be devoted to inside work in that wing.
Bright sent Kurtz, an engineer employed by the plaintiff, to the site of the work. He arrived there on August 29, the day before the bids were to be opened. Bright testified, in regard to him:
He has been with me about two and one half years, and I am sure he knoAvs bow my mind travels, and I hoAV his travels, * * * He was very close to and familiar with my work in bidding and everything else * * *.
Bright also testified:
No; he was up there to get my bid. We like to have as much time as possible before opening the subbids and everything else. So, in order to avoid complications, and so forth, we thought we would send Kurtz up there, and he Avould call me, and I would give him the figure and he would give it to Captain McKeever.
Before ten o’clock on the morning of August 30th Kurtz presented the plaintiff’s bid of $202,900, presumably on the form executed by Bright at Washington, D. C., the plaintiff’s home office, with the figure not filled in, and carried by Kurtz *196 to Fort Niagara. Kurtz must, therefore, have called Bright before he filled in the figure and handed in the bid. The bids were opened at ten o’clock. Kurtz immediately thereafter called Bright again and told him that the plaintiff was the low bidder, but only about $300 low. In one of these conversations Kurtz told Bright that the Government had encountered difficulties in its work on the foundations; that it had encountered an underground spring; that it was using WPA labor which it could work only a limited number of hours per week; and that the foundations would not be ready “for probably two or three or four months.”
From the time of this conversation Bright had no expectation or hope of the foundations being ready at or anywhere near the times stated in the invitation for bids. In fact, as shown in findings 10 and 12, the three foundations were completed and the sites cleared 15, 27, and 40 days, respectively, after the dates given in the invitation, and therefore much sooner than Kurtz had predicted. From the time of this conversation Bright acted upon his knowledge that the foundations would not be completed on time, and made all his arrangements accordingly.
Bright testified that Kurtz told him that the foundations would be late when he called him to tell him that the plaintiff was the low bidder. He did not testify directly at all as to his other conversation with Kurtz, before ten o’clock the same day or perhaps the day before. We have found, as we must, that that conversation occurred, because Kurtz was sent there, as Bright testified, to “call me, and I would give him the figure and he would give it to Captain Mc-Keever.” Bright’s testimony that the information about the foundations came to him after the bids were in was not pointed, nor was he cross-examined on the point. We can only conclude that his testimony that the information came fco him in the conversation after the opening was an inadvertence. We cannot believe that Kurtz, an engineer employee of the kind described by Bright in his testimony, would have gone to the site of the work on which the plaintiff intended to bid, and called Bright to get the figure to insert in the bid without telling him, before putting in the plaintiff’s bid, a fact of great importance in relation to (he *197 amount of the bid. In answer to plaintiff’s counsel’s questions, Bright testified:
Q. Could he tell by looking at the site whether the foundations were ready?
A. Oh, surely.
Q. You said he was an engineer ?
A. Yes.
We have concluded, therefore, that when Bright gave Kurtz over the telephone the figure to write into the plaintiff’s bid, Bright knew the facts, and his expectations for the future were considerably gloomier than the events ultimately warranted. If he did not increase his bid correspondingly it would seem to have been because he did not count so heavily upon the prompt completion of the foundations as he now says that he did. If, as we have found, the plaintiff’s bid was submitted when the plaintiff knew all of the relevant facts, it cannot, of course, complain that it was misled to its damage, because it was not misled at all. Legal doctrines relating to misrepresentation have, therefore, no application. The only possible basis for recovery would be that the Government, by the addendum to the specifications, was offering to warrant to the successful bidder that the foundations would be ready by the specified dates although the bidder knew perfectly well that they would not be and had no expectation or hope that they would be. The Government would, thus, be inviting bids on a construction job plus a lawsuit. This would be a legally possible, though a most extraordinary, transaction, between private persons. Even if it would be legally possible for the Government to enter into such a transaction, we have no indication that either party here had any intent to do so.
Our inference that the plaintiff knew the facts when it submitted its bid is fortified by the fact that, if it did not know them then, it learned them shortly thereafter, yet made no sort of protest or objection to its plight. Kurtz said nothing to the officers at Fort Niagara. Bright, in Washington, was called by Major Violante and told that the time, 550 days, which the plaintiff had specified in its bid as the time required for completion was too long to suit the Government, and was asked to reduce the time to 300 days. *198 Bright, making no mention of any disappointment about the time of completion of the foundations, agreed to reduce the time to 300 days and wrote the letter quoted in finding 6. We hardly think it is possible that one who had been seriously misled would have failed to utter even a mild protest. Its letter of October 26, quoted in finding 10, is much too late to constitute a complaint recenti facto. Its letter of December 16, quoted in finding 14, contains the untrue statement that :
Our contract was dated September 3,1938, and we were given notice to proceed on September 6, 1938. Upon receiving notice to proceed, however, we found that the foundations were not then ready.
It is possible that we are wrong in our finding that the plaintiff knew, when it put in its bid, that the foundations would not be completed on time. But the result is not changed by shifting the time when Bright learned the facts about the foundations from before the opening of the bids to shortly thereafter. The bid was still, at that time, only an offer. If it was, as we are now assuming, induced by a serious misrepresentation of material facts, the plaintiff could have withdrawn it with impunity, and could have thus completely escaped damage. If the plaintiff had asked to be allowed to withdraw its bid, and had been threatened with the penalty on its bid bond, a different question might be presented. But it did not ask, or desire, so far as appears, to withdraw its bid. It will be remembered that its bid was only $300 low, so any increase that it might have asked to be allowed to make, on account of its being misled, would have kept it from being the low bidder.
After the plaintiff had, admittedly, full knowledge of the facts, it materially changed the offer contained in its bid, by reducing the number of days in which it would agree to complete the work from S50 to 300 days. Thus its real and final offer, and the one which was accepted and set the terms of the contract, was made by the plaintiff with complete knowledge of the facts here complained of. Thereupon the dates set in the specifications for the completion of the foundations passed completely outside the contemplation of the contract. Neither party, when the plaintiff’s modified offer was made, *199 and accepted by tlie Government, bad any expectation that the foundations would be ready on those dates. Their not being ready was, therefore, no breach of the contract.
The petition will be dismissed.
It is so ordered.
Whetaker, Judge; Littleton, Judge; and Whaley, Ohief Justice, concur.
JoNES, Judge, took no part in the decision of this case.